# EXHIBIT A

*[handwritten: 2/9/2024 11:58 AM / A. Gorman VC #482]*

Kathleen D. Weron [8437]
Amanda L. Fuller [18379]
OGLETREE, DEAKINS, NASH
  SMOAK & STEWART, P.C.
15 W. South Temple, Suite 950
Salt Lake City, Utah 84101
Telephone: 801.658.6166
Facsimile: 385.360.1707
kathleen.weron@ogletree.com
amanda.fuller@ogletree.com

*Attorneys for Plaintiff*

---

## IN THE SECOND JUDICIAL DISTRICT COURT
## DAVIS COUNTY, STATE OF UTAH
### Court Address: 800 W State St, Farmington, UT 84025

| | |
|---|---|
| ACD DIRECT, INC., <br><br> Plaintiff, <br><br> v. <br><br> PACIFICA FOUNDATION, INC. and PACIFICA FOUNDTAION, INC. d/b/a WBAI-FM, <br><br> Defendants. | **SUMMONS TO PACIFICA FOUNDATION, INC.** <br><br> Case No. 230701225 <br> Judge Blaine Rawson |

**THE STATE OF UTAH TO:**

**PACIFICA FOUNDATION, INC.**
c/o Stephanie D. Wells, Registered Agent
3729 Cahuenga Boulevard West
Studio City, CA 91604

| | |
|---|---|
| A lawsuit has been filed against you. You must respond in writing by the deadline for the court to consider your side. The written response is called an Answer. | Se ha presentado una demanda en su contra. Si desea que el juez considere su lado, deberá presentar una respuesta por escrito dentro del periodo de tiempo establecido. La respuesta por escrito es conocida como la Respuesta. |

**Deadline!**
Your Answer must be filed with the court and served on the other party **within 30 days** of the date you were served with this Summons.

If you do not file and serve your Answer by the deadline, the other party can ask the court for a default judgment. A default judgment means the other party can get what they asked for, and you do not get the chance to tell your side of the story.

**Read the complaint/petition**
The Complaint or Petition has been filed with the court and explains what the other party is asking for in their lawsuit. Read it carefully.

**Answer the complaint/petition**
You must file your Answer in writing with the court **within 30 days** of the date you were served with this Summons. You can find an Answer form on the court's website: utcourts.gov/ans

Scan QR code to visit page

**Serve the Answer on the other party**
You must email, mail or hand deliver a copy of your Answer to the other party (or their attorney or licensed paralegal practitioner, if they have one) at the address shown at the top left corner of the first page of this Summons.

**¡Fecha límite para contestar!**
Su Respuesta debe ser presentada en el tribunal y también con la debida entrega formal a la otra parte **dentro de 30 días** a partir de la fecha en que usted recibió la entrega formal del Citatorio.

Si usted no presenta una respuesta ni hace la entrega formal dentro del plazo establecido, la otra parte podrá pedirle al juez que asiente un fallo por incumplimiento. Un fallo por incumplimiento significa que la otra parte recibe lo que pidió, y usted no tendrá la oportunidad de decir su versión de los hechos.

**Lea la demanda o petición**
La demanda o petición fue presentada en el tribunal y ésta explica lo que la otra parte pide. Léala cuidadosamente.

**Cómo responder a la demanda o petición**
Usted debe presentar su Respuesta por escrito en el tribunal **dentro de 30 días** a partir de la fecha en que usted recibió la entrega formal del Citatorio. Puede encontrar el formulario para la presentación de la Respuesta en la página del tribunal: utcourts.gov/ans-span

Para accesar esta página escanee el código QR

**Entrega formal de la respuesta a la otra parte**
Usted deberá enviar por correo electrónico, correo o entregar personalmente una copia de su Respuesta a la otra parte (o a su abogado o asistente legal, si tiene) a la dirección localizada en la esquina izquierda superior de la primera hoja del citatorio.

**Finding help**
The court's Finding Legal Help web page (utcourts.gov/help) provides information about the ways you can get legal help, including the Self-Help Center, reduced-fee attorneys, limited legal help and free legal clinics.

Scan QR code to visit page

**Cómo encontrar ayuda legal**
Para información sobre maneras de obtener ayuda legal, vea nuestra página de Internet Cómo Encontrar Ayuda Legal. (utcourts.gov/help-span) Algunas maneras de obtener ayuda legal son por medio de una visita a un taller jurídico gratuito, o mediante el Centro de Ayuda. También hay ayuda legal a precios de descuento y consejo legal breve.



Para accesar esta página escanee el código QR



An Arabic version of this document is available on the court's website:
نسخة عربية من هذه الوثيقة على موقع المحكمة على الإنترنت:توجد
utcourts.gov/arabic-out

قم بالمسح الضوئي
للرمز لزيارة الصفحة

A Simplified Chinese version of this document is available on the court's website:
本文件的简体中文版可在法院网站上找到：
utcourts.gov/chinese-out



请扫描QR码访问网页

A Vietnamese version of this document is available on the court's website:
Một bản tiếng Việt của tài liệu này có sẵn trên trang web của tòa:
utcourts.gov/viet-out



Xin vui lòng quét mã QR (Trả lời nhanh)để viếng trang

I declare under criminal penalty under the law of Utah that everything stated in this document is true.

SIGNED at Salt Lake City, Utah this 8th day of January, 2024.

                                    OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

                                    */s/ Kathleen D. Weron*
                                    *Attorneys for Plaintiff*

Kathleen D. Weron [8437]
Amanda L. Fuller [18379]
OGLETREE, DEAKINS, NASH
  SMOAK & STEWART, P.C.
15 W. South Temple, Suite 950
Salt Lake City, Utah 84101
Telephone: 801.658.6166
Facsimile: 385.360.1707
kathleen.weron@ogletree.com
amanda.fuller@ogletree.com

*Attorneys for Plaintiff ACD Direct, Inc.*

## IN THE SECOND JUDICIAL DISTRICT COURT
## DAVIS COUNTY, STATE OF UTAH
### Court Address: 800 W State St, Farmington, UT 84025

| | |
|---|---|
| ACD DIRECT, INC.,<br><br>　　　Plaintiff,<br>v.<br><br>PACIFICA FOUNDATION, INC. and PACIFICA FOUNDATION, INC. d/b/a WBAI-FM,<br><br>　　　Defendants. | **COMPLAINT**<br>**(JURY DEMAND)**<br><br>Tier 3<br><br>Case No. 230701225<br>Judge Blaine Rawson<br><br>**Deadline!**<br>Your Answer must be filed with the court and served on the other party **within 30 days** of the date you were served with the Summons. If you do not file and serve your Answer by the deadline, the other party can ask the court for a default judgment. A default judgment means the other party can get what they asked for, and you do not get the chance to tell your side of the story. |

Plaintiff ACD Direct, Inc. ("ACD Direct"), through undersigned counsel, OGLETREE DEAKINS NASH SMOAK & STEWART, P.C., hereby asserts the following claims for relief against

Defendants Pacifica Foundation, Inc. ("Pacifica") and Pacifica Foundation, Inc. d/b/a WBAI-FM, ("WBAI") (collectively referred to as "Defendants").

## PARTIES

1. Plaintiff ACD Direct is a Utah corporation with its principal place of business at 240 N. East Promontory, Suite 200, Farmington, Utah 84025. ACD Direct is licensed and authorized to do business, and does business, in Utah.

2. Defendant Pacifica is the parent company of WBAI with its principal place of business at 3729 Cahuenga Boulevard, Studio City, California 91604.

3. Defendant WBAI is an FM radio station in New York City and the d/b/a of Pacifica with its principal place of business at 33270 Cahuenga Boulevard, Studio City, California 91604.

## JURISDICTION AND VENUE

4. This action seeks to enforce Defendants' contractual and legal obligations owed to ACD Direct.

5. This Court has subject matter jurisdiction pursuant to Utah Code Ann. § 78A-5-102(2).

6. This Court has personal jurisdiction over Defendants under Utah Code § 78B-3-205 and because Defendants are a person and/or entity who have contractually submitted to the jurisdiction of the Second District Court for the State of Utah through a forum selection clause.

7. Venue is proper in this Court pursuant to Utah Code § 78B-3-307 and because Defendants are a person and/or entity who have contractually submitted to venue in the Second District Court for the State of Utah through a forum selection clause.

8. The claims alleged herein currently involve breach of contract, breach of the covenant of good faith and fair dealing, negligent misrepresentation and intentional misrepresentation and qualify as Tier 3. Utah R. Civ. P. 26(c)(3). ACD Direct reserves the right to amend this Complaint to adjust the tier designation as proceedings and discovery progress.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

**I.     The Parties' Contractual Agreement.**

9. Established in 2003, ACD Direct is a leading customer support company that provides call center management services to some of the world's largest companies and nonprofit organizations.

10. ACD Direct manages a virtual workforce and employs a team of over 1,000 agents experienced in tech support, telephony, fundraising, order taking and fulfillment, and call center management.

11. For example, businesses and nonprofit organizations use ACD Direct to route incoming calls to ACD Direct's customer support professionals.

12. On March 12, 2021, ACD Direct entered into a Contract Center Inbound Service Agreement (the "Contract") with Defendants Pacifica and WBAI.

13. Defendants contracted for ACD Direct's services in connection with providing services, including, but not limited to, call answering services, data management, hub-based routing, electronic telecommunications switching services, and interactive voice response solutions.

14. The term of the Contract is March 12, 2021 through March 11, 2024.

15. In exchange for its services, Defendants agreed to pay ACD Direct ten days after receiving its monthly invoice for services rendered during the previous month. Defendants agreed to pay the amount set forth in the invoice each month in full.

16. Each Party maintains the right to terminate the Contract upon 30 days prior written notice to the other Party.

17. However, Defendants specifically agreed that, upon termination or expiration of the Contract, Defendants are responsible to pay ACD Direct for any outstanding amounts for services satisfactorily performed prior to the date of termination.

## II. Defendants Accumulated an Outstanding Balance on Unpaid Invoices.

18. Beginning in March 2021, Defendants began falling behind in paying its monthly invoices to ACD Direct. By June 2023, Defendants had an outstanding balance of $76,057.28 owed to ACD Direct in exchange for services provided by ACD Direct.

19. ACD Direct, at its own expense, hired and paid a third-party consultant to work with Defendants to help Defendants increase their donations and enable them to pay their outstanding balance owed to ACD Direct. ACD Direct acted in a good-faith attempt to help Defendants improve their negative financial situation.

20. On June 14, 2023, ACD Direct sent a letter to Defendants notifying Defendants that their account "continues to be severely past due and no progress has been made to keep your account current which was the agreement we had reached early in 2023." ACD Direct notified Defendants that it would discontinue all services until a pre-payment for services was made in the amount of $6,500 by June 21, 2023.

21. On June 22, 2023, Defendants made two payments in the amount of $6,000 and $500 for a total of $6,500, but failed to pay the outstanding debt owed to ACD Direct.

**III. Defendants Made Fraudulent Misrepresentations to ACD Direct.**

22. On the same day, ACD Direct spoke with agents of Defendants, Stephanie Wells ("Wells") and Arthur Schwartz ("Schwartz"), who appeared as representatives for Defendants Pacifica and WBAI, respectively. Defendants informed ACD Direct's Chief Executive Officer that Defendants had sold its tower, where its antenna was located, and the sale would close shortly. Defendants promised that they would pay the full amount of the outstanding balance owed to ACD Direct no later than ten days after closing on the sale of its tower and further promised that payment to ACD Direct would be a top three priority.

23. ACD Direct memorialized the Parties' agreement in an Addendum A to the Contract and sent it to Defendants on June 28, 2023.

24. Defendants did not return the executed Addendum A and failed to respond to ACD Direct, despite repeated emails and telephone calls requesting that Defendants sign and return Addendum A memorializing the Parties' agreement that Defendants would pay its outstanding balance upon closing from the proceeds of the sale of its tower.

25. However, on or about July 24, 2023, Defendants informed ACD Direct that Defendants had received a bequest in the amount of $200,000 that had been approved by the court. Defendants stated that from the $200,000 bequest, WBAI "would pay ACD Direct in full first" and would pay the entire outstanding amount owed to ACD Direct from that gift.

26. In an email dated August 3, 2023, Defendants again stated that WBAI would pay ACD Direct's outstanding balance from the bequest it received, specifically representing that "the

'person who signs checks is out of the country until September,' but that "[t]he bequest is $200,000; you will be paid immediately upon receipt."

27. ACD Direct followed up Defendants on numerous occasion after August 3, requesting payment on Defendants' outstanding balance owed to ACD Direct.

28. On August 18, 2023, Defendants sent another email to ACD Direct, promising, the "[m]oney will come in September."

29. However, on August 28, 2023, Berthold Reimers ("Reimers"), General Manager for WBAI, sent an email to ACD Direct stating that Defendants would no longer be able to pay $7,000 per month for ACD Direct's services.

30. On October 6, 2023, Defendant's representative informed ACD Direct's Chief Operating Officer, that the funds from the bequest ($200,000) had been used to pay off "other debts," including WBAI's antenna, past wages and insurance.

31. Since October 6, 2023, ACD Direct has had no further communications with Defendants, and Defendants' outstanding balance owed to ACD Direct remains unpaid.

## FIRST CAUSE OF ACTION
### Breach of Contract

32. ACD Direct incorporates by reference the allegations of this Complaint as though fully set forth herein.

33. ACD Direct and Defendants entered into a valid and enforceable contract on March 12, 2021 regarding Contract Center Services to be provided by ACD Direct to Defendants, including call answering services, data management, hub-based routing, electronic telecommunications switching services, and interactive voice response solutions.

34. ACD Direct agreed to deliver a monthly invoice for Contract Center Services to Defendants each month for services rendered during the previous month.

35. Under the terms of the contract, Defendants agreed to pay the amount set forth in the invoice in full each month no later than ten days after the invoice date.

36. At all times, ACD Direct fulfilled all of its obligations under the Parties' contract in such a way as to either meet or exceed Defendants' reasonable expectations.

37. Defendants breached its contract with ACD Direct when it failed repeatedly to pay its monthly invoice from ACD Direct within ten days after receipt.

38. Defendants have now discontinued service and have failed to pay ACD Direct for the outstanding amounts owed for services performed prior to the date of termination.

39. As a direct and proximate result of Defendants' breach, ACD Direct has suffered damages in an amount to be determined at trial but for no less than the amount past due under the contract.

## SECOND CAUSE OF ACTION
### Breach of the Implied Covenant of Good Faith and Fair Dealing

40. ACD Direct incorporates by reference all preceding allegations of this Complaint as though fully set forth herein.

41. Under Utah law, an implied covenant of good faith and fair dealing is inherent in all contracts.

42. Pursuant to the implied covenant, Defendants promised and agreed that it would refrain from conduct that would intentionally destroy or injure ACD Direct's rights to receive the fruits of the Parties' contract.

43. Defendants breached this implied covenant when it refused to resolve the nonpayment of ACD Direct's outstanding, unpaid invoices and, instead, informed ACD Direct that it would pay the outstanding amount in arrears in approximately June 2023 with the sale of its tower.

44. After failing to pay the outstanding debt owed to ACD Direct, Defendants informed ACD Direct, on or about July 24, 2024, that it had received a $200,000 bequest. Defendants represented that from the $200,000 bequest, they would prioritize paying ACD Direct in full. Defendants promised that ACD Direct would "be paid immediately upon receipt" and "money would come in September."

45. During this time, based on Defendants' representations that it would pay the full amount in arrears either with the sale of Defendants' tower or with money from the bequest, ACD Direct continued to provide monthly services under the Contract to Defendants.

46. Defendants breached this implied covenant when it refused to pay the outstanding amount to ACD Direct, as it represented it would. ACD Direct's repeated requests for payment were met with obfuscation and silence.

47. On or about August 28, 2023, Defendant's general manager, Reimers, sent an email to ACD Direct indicating that Defendants would discontinue monthly services, but made no mention of paying the outstanding amount already owed under the contract, or payment from the sale of Defendants' tower or bequest.

48. As a direct and proximate result of Defendants' breach of the implied covenant of good faith and fair dealing, ACD Direct has suffered damages in an amount to be determined at trial but for no less than the amount of past due under the contract, including interest.

## THIRD CAUSE OF ACTION
**Negligent Misrepresentation**

49. ACD Direct incorporates by reference all preceding allegations of this Complaint as though fully set forth herein.

50. In June 2023, Defendants informed ACD Direct that it would pay the outstanding amount owed to ACD Direct from the sale of its tower, the sale of which Defendants represented would close shortly. Defendants promised that ACD Direct would be paid as a "top three priority."

51. In August 2023, Defendants informed ACD Direct that it would pay the outstanding amount owed to ACD Direct from the proceeds it received from a recent bequest in the amount of $200,000, which Defendants represented had been approved by the court. Defendants stated unequivocally the "money would come in September."

52. ACD Direct reasonably relied on these representations and did not discontinue its services to Defendants and continued to provide services to Defendants through October 2023.

53. These representations were careless and negligent misrepresentations of material fact because Defendants did not sell, or close on its tower, and Defendants have not paid its outstanding balance from the bequest it claims it received.

54. Rather, Defendants paid off other debts, including the WBAI antenna, which apparently was never sold.

55. On August 28, 2023, Defendants informed ACD Direct that it was going to re-port its number and would discontinue services. Defendants have not paid the outstanding balance owed to ACD Direct, and which they made representations that they would pay either immediately upon closing the sale of its tower or in September from the proceeds of a bequest.

9

56. Defendants' outstanding balance owed to ACD Direct remains unpaid and owing to ACD Direct.

57. ACD Direct has a pecuniary interest in these representations and continued service in reliance on Defendants' promise to pay the outstanding balancing owed to ACD Direct from either the sale of its tower or from the proceeds of the bequest.

58. Defendants were in a superior position to know whether Defendants' tower had been sold, or whether Defendants had received $200,000 in a bequest and whether payment in full would be forthcoming to ACD Direct.

59. Defendants should have reasonably foreseen that ACD Direct would decide to continue its services in reliance on Defendants' representations that its outstanding balance would be paid from the proceeds of the sale of the tower or from the proceeds of the bequeath.

60. These misrepresentations were the actual and proximate cause of ACD Direct's loss.

## FOURTH CAUSE OF ACTION
### Intentional Misrepresentation

61. ACD Direct incorporates by reference all preceding allegations of this Complaint as though fully set forth herein.

62. Beginning in June 2023, Defendants represented that they would pay the outstanding amount owed to ACD Direct pursuant to the Parties' contract from the proceeds of the sale of their tower, which Defendants represented they would be closing on soon. Defendants promised to pay the outstanding debt owed to ACD Direct within ten days of closing and would make ACD Direct a "top three" priority.

63. In addition, in August 2023, Defendants informed ACD Direct that it would, in fact, pay the outstanding balance owed to ACD Direct "in September" 2023 from the proceeds it received from a bequest of $200,000, which it represented had been recently approved by the court.

64. Defendants made these representations knowing that they were false or made the statements recklessly and without regard for its truth.

65. Defendants intended that ACD Direct rely on these statements and continue to provide monthly services pursuant to the parties' contract.

66. ACD Direct, acting reasonably and in ignorance of the falsity of Defendants' representations, did in fact rely and was induced to continue providing services to Defendants.

67. Defendants did not sell their tower/antenna and did not pay the outstanding balance owed to ACD Direct from the proceeds of any such sale.

68. Defendants did not pay ACD Direct in September, as Defendants had previously represented, from the bequest it received. In fact, Defendants informed ACD Direct that it had used the proceeds from the bequest to off "other debts," including WBAI's antenna, past wages and insurance.

69. As a direct and proximate result of Defendants' conduct, as set forth above, ACD Direct has suffered damages in an amount to be shown at the time of trial.

70. Defendants' conduct was willful and/or intentionally fraudulent, and/or manifested a knowing and reckless disregard of ACD Direct's rights, warranting punitive damages.

## **PRAYER FOR RELIEF**

WHEREFORE, ACD Direct prays for judgment against Defendants as follows:

1. On the First Cause of Action, for a determination that Defendants have breached their contract with ACD Direct and a judgment in favor of ACD Direct and against Defendants in an amount to be proven at trial;

2. On the Second Cause of Action, for a judgment in favor of ACD Direct and against Defendants in an amount to be proven at trial;

3. On the Third Cause of Action, for a judgment in favor of ACD Direct and against Defendants in an amount to be proven at trial;

4. On the Fourth Cause of Action, for a judgment in favor of ACD Direct and against Defendants in an amount to be proven at trial and for exemplary and punitive damages because Defendants' actions were intentionally fraudulent, and/or manifested a knowing and reckless indifference toward, and disregard of, the rights of ACD Direct, as shall be established at trial;

5. For interest, expenses and costs of suit to the extent permitted by law;

6. For costs, attorneys' fees, and expenses of litigation; and

7. For such other and further relief as the court deems just and equitable.

### Jury Demand

Pursuant to Utah Rule of Civil Procedure 38(b), Plaintiff ACD Direct hereby requests a trial by jury as to all issues triable to a jury in this action.

DATED this 3rd day of November, 2023.

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

/s/ Kathleen D. Weron
Kathleen D. Weron
Amanda L. Fuller
Attorneys for Plaintiff ACD Direct, Inc.

59089492.v1-OGLETREE

12